Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MOCA ECO PARK CORPORATION **Peticionario**<br><br>V.<br><br>MUNICIPIO DE VILLALBA, ET AL. **Recurrida** | KLCE202400382 | *CERTIORARI* procedente del Tribunal de Primera Instancia Ponce<br><br>Caso Núm: J CD2014-0176<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2024.

El 3 de abril de 2024, Moca Eco Park (MEP o peticionaria) compareció ante nos mediante un *Escrito de Certiorari* y solicitó la revisión de una *Resolución* que se dictó el 4 de marzo de 2024 y se notificó el 12 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante el aludido dictamen, el TPI denegó la *Moción Urgente para que se Ordene el Pago de la Sentencia* [...] que presentó la peticionaria ya que no se ajustaba a los preceptos y lineamientos de la Ley Núm. 66-2014, según enmendada, mejor conocida como *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, 3 LPRA sec. 9101 nota (Ley Núm. 66-2014).

Por los fundamentos que expondremos a continuación, expedimos el recurso de *certiorari* y **confirmamos** el dictamen recurrido en cuanto a que no procede la ejecución de la sentencia conforme lo dispone la Regla 51 de Procedimiento Civil, 32 LPRA Ap. V., R.51 y **modificamos** a los efectos de que se celebre una vista evidenciaria para que se cumpla con lo establecido en el Art. 29 de la Ley Núm. 66-2014, *supra*.

## I.

El 25 de febrero de 2014, MEP presentó una *Demanda* sobre cobro de dinero en contra del Municipio de Villalba (Municipio) y su alcalde, el Sr. Luis Javier Hernández (en conjunto, los recurridos).[1] En síntesis, reclamó la suma de $125,000.00 por concepto de unos servicios que le proveyó al Municipio de procesamiento, trituración, almacenamiento de material vegetativo, más intereses, costas y honorarios de abogado.

Posteriormente, las partes llegaron a una *Estipulación Transaccional* mediante la cual les dieron final a las reclamaciones incoadas por la parte peticionaria.[2] En lo pertinente, en esta, el Municipio solicitó acogerse a la Ley Núm. 66-2014, *supra*, para establecer un plan de pago para la deuda que estos reconocieron. Específicamente, acordaron lo siguiente:

1. Que el Municipio le efectuaría a MEP mensual por espacio de cuarenta y ocho plazos por la cantidad de dos mil seiscientos cuatro con diecisiete centavos ($2,604.17), comenzando a partir de que el Tribunal dicte Sentencia de conformidad.

2. El pago antes mencionado deberá ser efectuado dentro de los primeros veinte (20) días de cada mes calendario.

3. Del Municipio no poder efectuar el pago dentro de los primeros veinte (20) días del mes, notificará este hecho por escrito a MEP, por conducto de su abogado y solicitará un término adicional para cumplir con el correspondiente pago. El término de extensión a solicitar el Municipio en dicho caso no excederá de diez (10) días naturales. Del Municipio solicitar el término de extensión antes mencionado, MEP concederá el mismo, el cual no excederá de diez (10) días naturales adicionales.

Así las cosas, el 16 de abril de 2015, el TPI dictó una *Sentencia* que se notificó el 17 de abril de 2015, en la cual aprobó y a su vez adoptó la *Estipulación Transaccional* que presentaron las partes conforme a los términos y condiciones contenidos en esta.[3]

---

[1] Véase, págs. 20-21 del apéndice del recurso.
[2] Íd., págs. 24-26.
[3] Íd., pág. 23.

Ante el incumplimiento por parte del Municipio con el plan de pago estipulado, el 15 de agosto de 2017, la peticionaria presentó una Nueva *Moción Urgente Solicitando Ordene el Pago de la Sentencia y Encuentre Incurso en Desacato al Alcalde* [...].[4] Señaló que el 20 de julio de 2016 se celebró una vista en la cual el Municipio se comprometió a cumplir con el plan de pago antes expuesto y que luego de esa vista únicamente cumplió con un pago. Además, sostuvo que se celebró otra vista el 4 de mayo de 2017 en la cual el Municipio informó que el pago de la presente controversia estaba contemplado en el próximo año fiscal. Añadió que estos de igual forma, se comprometieron a presentar Certificaciones a los efectos de hacer constar que en el presupuesto del próximo año fiscal se iban a incluir los pagos adeudados. Sin embargo, alegó que ya había pasado julio y el Municipio no había realizado ningún pago. Puntualizó que ya en cuatro ocasiones el Municipio se había comprometido en realizar unos abonos a la deuda y no cumplió. Ante ello, solicitaron al TPI a que le ordenara al Municipio a pagar la deuda sin plan de pago alguno. Asimismo, solicitó que encontrara incurso en desacato al alcalde por no cumplir con las órdenes del Tribunal.

Cabe precisar, que los recurridos presentaron su oposición a la solicitud antes expuesta y posteriormente, el TPI celebró una vista el 4 de mayo de 2017 para atender el referido asunto. En esta vista, la directora de finanzas del Municipio se expresó en cuanto a la situación fiscal del Municipio y afirmó que en el próximo presupuesto correspondiente al año fiscal del 2017-2018 se iba a incluir el plan de pago del presente caso. Además, esta última le entregó a la parte peticionaria un cheque por la cantidad de $2,604.17 correspondientes al tercer pago. En vista de lo antes

---

[4] Íd., págs. 29-33.

expuesto, el TPI le ordenó a los recurridos a presentar una certificación de todas las demandas contra el Municipio y la Resolución de la Asamblea Municipal luego de que se aprobara el presupuesto en el cual se incluyó la cuantía de la Sentencia del presente caso. El 19 de julio de 2017, los recurridos cumplieron con la entrega de los documentos solicitados.

Así las cosas, el 14 de noviembre de 2017, el TPI dictó una *Resolución* a estos efectos mediante la cual declaró No Ha Lugar a la *Moción Urgente Solicitando se Ordene el Pago de la Sentencia y Encuentre Incurso en Desacato al Alcalde* [...] que presentó la peticionaria.[5] En esta, luego de realizar un análisis de las disposiciones aplicables, a saber, la Ley Núm. 66-2014, *supra*, y la Ley Núm. 3-2017, según enmendada, mejor conocida como *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico*, 3 LPRA 9391 *et seq.*, determinó lo siguiente:

> [E]ste Tribunal concluye que al Municipio de Villalba le asiste el derecho a que la sentencia se satisfaga mediante el plan de pagos que indica la Ley 3-2017.
>
> No hay duda en cuanto a que el municipio está protegido por el Art. 13 de la Ley 3-2017 y el Art. 29 de la Ley Núm. 66-2014. En ese sentido, la sentencia emitida el 16 de abril de 2015 podrá ser satisfecha mediante un plan de pago que comprenderá entre tres (3) años y cuatro (4) años. 3 LPRA sec. 9141. Obviamente, el cumplimiento del plan de pago está sujeto a la disponibilidad de fondos. De hecho, de no haber fondos disponibles para honrar los pagos en un año fiscal en particular, se aplazará el pago para el próximo año fiscal. Íd. Por otro lado, debemos destacar que la ley expresamente prohíbe el embargo de fondos para ejecutar la sentencia.
>
> [...] Debemos tener presente que todavía el año fiscal no ha terminado y que aún no existe una certificación del municipio sobre la falta de disponibilidad de fondos para emitir el primer pago durante el año fiscal 2017-2018, por lo que, sería prematuro determinar en este momento que el municipio esté incumpliendo el plan de pago que provee la propia ley.

---

[5] Íd., págs. 34-42.

> Reiteradamente el Supremo ha manifestado que el remedio apropiado en situaciones en que se interesa el cumplimiento de una sentencia de pago contra el Gobierno o sus Municipios consiste en ordenar a la entidad gubernamental que incluya en su próximo presupuesto una partida para satisfacer la totalidad de la sentencia más sus intereses. Librotex, Inc. v. AAA, 138 DPR 938 (1995). En este caso, el Municipio de Villalba ya incluyó en su presupuesto para el anno fiscal corriente una partida para el pago de la Sentencia. Tal actuación es cónsona con lo establecido en el artículo 7.003 de la Ley de Municipios Autónomos, 21 LPRA sec. 4303. Además, el Municipio en su réplica a la solicitud de ejecución de sentencia aceptó que la sentencia puede ser satisfecha mediante el plan de pagos que indica la Ley 66-2014. De no emitir ningún pago durante este año fiscal, previa certificación sobre la disponibilidad de fondos, se aplazará el pago para el próximo año fiscal, "teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados". Art. 13(g) de la Ley Núm. 3-2017 y Art. 28 (g) de la Ley Núm. 66-2014, 3 LPRA sec. 9141. En tal caso, el único remedio al que tendrá derecho la parte demandante es reclamar los intereses que procedan.

Así las cosas, el 13 de noviembre de 2023, la parte peticionaria presentó una *Moción Urgente para que se Ordene el Pago de la Sentencia* [...].[6] En primer lugar, señaló que en varias ocasiones había tenido que acudir ante el TPI por el incumplimiento por parte de los recurridos con el plan de pago estipulado. Luego, presentó un desglose de los pagos realizados por el Municipio y, en vista de ello, concluyó que este último todavía le debía la cantidad de $65,104.43. Resaltaron que el último pago que se realizó fue el 11 de febrero de 2020. Por esta razón, solicitó el pago de la cantidad adeudada antes mencionada más los intereses post sentencia que según MEP totalizaban a $8,913.06.

En respuesta, el 18 de diciembre de 2023 los recurridos presentaron una *Moción en Oposición a Moción Urgente que se Ordene Pago*.[7] En síntesis, argumentaron que la solicitud que presentó MEP era una de ejecución de sentencia y no procedía ya que se presentó fuera del plazo de cinco (5) años que establecía la

---

[6] Íd., págs. 43-44.
[7] Íd., págs. 45-51.

Regla 51 de Procedimiento Civil, 32 LPRA Ap. V., R. 51 para poder presentar una solicitud de dicha índole. Por otro lado, sostuvo que no procedía la solicitud de la peticionaria toda vez que el asunto estaba regulado bajo la Ley Núm.66-2014, *supra,* y cualquier remedio postsentencia debía ajustarse a las disposiciones de este estatuto.

El 12 de enero de 2024, MEP presentó una *Réplica a Moción en Oposición a Moción Urgente* [...].[8] En esta, indicó que los recurridos no habían realizado certificación alguna de falta de fondos para pagar la sentencia según lo exige el Art. 29 de la Ley Núm. 66-2014, 32 LPRA sec. 9142. Además, puntualizó que si había asignaciones legislativas como lo era el presupuesto, cuando no se pudiese pagar una deuda había que realizar una certificación para que fuese aprobada por la Oficina de Gerencia y Presupuesto. A tenor con ello, señaló que no podía ser la intención de ningún legislador que un municipio o agencia determinara unilateralmente que no tenía dinero en su cuenta para no pagar deudas. Sostuvo que ello constituiría un fraude masivo para el gobierno. Concluyó que conforme por las razones antes esbozadas era evidente que el Municipio no había cumplido con el Art. 29 de la Ley Núm. 66-2014, *supra,* por lo que procedía la ejecución de la sentencia y el Municipio no podía solicitar los beneficios del referido estatuto.

Evaluados los argumentos de ambas partes, el 4 de marzo de 2024, el TPI emitió una *Resolución* que se notificó el 12 de marzo de 2024 mediante la cual denegó la solicitud de la peticionaria del 13 de noviembre de 2023 por no ajustarse a los preceptos y lineamientos de la Ley Núm. 66-2014, *supra.*[9] Específicamente, en lo pertinente, concluyó lo siguiente:

> [L]a Asamblea Legislativa estableció en el Art. 29 de la Ley 66-2014, ante, que no procede compeler a un

---

[8] Íd., págs. 52-55.
[9] Íd., págs. 1-7.

municipio a hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, cuando no existan fondos para ellos por haberse agotado la asignación legislativa destinada a esos fines. Ver Art. 29 de la Ley 66-2014, 3 LPRA sec. 9142. De hecho la contundencia de la prohibición en cuanto a procesos de ejecución es tan clara, que la Legislatura en el mencionado artículo consignó que: "por lo que se prohíbe el embargo de fondos para hacer efectivo un fallo emitido contra el Estado". _Íd._

[...]

El Art. 29 de la Ley 66-2014, _ante,_ establece un remedio exclusivo para aquellos casos en que no pueda cumplirse con el plan de pago que se haya establecido o acordado para el pago de una sentencia judicial. El remedio, que es exclusivo en virtud del Art. 3 de la propia ley, se limita al abono de los intereses que se acumulen durante dicho periodo de tiempo, pues como indicáramos previamente la ley establece que, en caso de incumplimiento con el plan de pago, el mismo se extiende por el número de plazos no pagados. _Ver_ Art. 28(g) de la Ley 66-2014, 3 LPRA sec. 9141(g).

Inconforme con este dictamen, el 3 de abril de 2024, la peticionaria presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al determinar que no procede el cobro de la Sentencia por prohibición establecida en la Regla 51.1 de Procedimiento Civil.**

> **Erró el Tribunal de Primera Instancia al determinar que el Municipio de Villalba le protege la Ley 66 del año 2014 y la Ley 3 de 2017 sin cumplir con los propios requisitos de la misma Ley.**

Atendido el recurso, el 4 de abril de 2024, emitimos una _Resolución_ en la cual le concedimos al Municipio hasta el 15 de abril de 2024 para presentar su postura. Oportunamente, la parte recurrida presentó un _Escrito en Cumplimiento de Orden_ en el cual negó que el TPI cometiera los errores que MEP le imputó. Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. _Veamos._

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, *supra*, el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos postsentencia [como la que tenemos ante nuestra consideración] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*". *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 339 (2012). En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones

discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

La Ley Núm. 66-2014, *supra*, se aprobó el 17 de junio de 2014 a los fines de declarar un estado de emergencia fiscal en el país y establecer procedimientos que le permitieran al Estado reducir gastos y amortiguar la crisis fiscal y económica que padecía –y padece- el Gobierno de Puerto Rico.[10]

Tomando en consideración el impacto económico que provoca el desembolso de grandes cantidades de dinero proveniente de las arcas del Estado, esta ley incluyó el capítulo IV. Este capítulo está dirigido a regular la forma y manera en que el Estado pagará cuantías adeudadas como consecuencia de un litigio que haya culminado en una sentencia final y firme, en contra del Estado. En síntesis, este capítulo busca aliviar el impacto que tiene en las finanzas del Estado el pago global de grandes sumas de dinero. Art. 28 de la Ley Núm. 66-2014, 3 LPRA 9141.

En lo pertinente a la controversia ante nos, el Art. 29 de la Ley Núm. 66-2014, 3 LPRA sec. 9142, establece el procedimiento a seguir cuando el Municipio no cuenta con fondos para hacer efectivo el pago respecto a una sentencia o plan de pago previamente autorizado. Específicamente el referido articulo lee como sigue:

> No se podrá compeler a las agencias o instrumentalidades del Estado, corporaciones públicas o municipios, funcionarios o empleados, a hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, cuando no existan fondos para ello por haberse agotado la asignación legislativa destinada a esos fines, **por lo que se prohíbe el embargo de fondos para hacer efectivo un fallo emitido contra el Estado. La determinación de falta**

---

[10] *Véase,* Preámbulo y Exposición de Motivos de la Ley Núm. 66-2014, *supra*.

**de fondos para realizar dicho pago deberá ser certificada por la agencia o instrumentalidades del Estado, corporación pública o municipio que se trate, y en caso de fondos que provengan de asignaciones legislativas, incluyendo del Fondo General, deberá ser confirmada por la Oficina de Gerencia y Presupuesto, cuya determinación al respecto será concluyente.**

**El remedio disponible cuando no existan fondos para el pago de sentencias será el pago de interés sobre la cantidad adeudada** conforme a lo establecido en las Reglas de Procedimiento Civil y las leyes especiales aplicables.

**Lo dispuesto en este Artículo también le será aplicable a los Municipios.** (Énfasis suplido).

Por su parte, la Ley Núm. 3-2017, *supra*, se aprobó con el fin de adoptar medidas para la reducción y el control del gasto público del Gobierno y de igual forma, extender las disposiciones adoptadas en la Ley Núm. 66-2014, *supra*.[11] En lo pertinente, el Art. 13(g) de este estatuto, 3 LPRA sec. 9403, discute los planes para la sentencia finales y firmes pendientes de pago y dispone que "de no haber disponibilidad de fondos para honrar el plan de pagos en un año fiscal particular, este será aplazado para el próximo año fiscal, teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados".

**-C-**

La Regla 51 de Procedimiento Civil, *supra*, regula el procedimiento de apremio o ejecución de sentencia. En lo pertinente, la Regla 51.1 del referido estatuto, *supra,* establece que:

> [l]a parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ésta ser firme. Expirado dicho término, la sentencia podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución.

---

[11] *Véase,* Exposición de Motivos de la Ley Núm. 3-2017, *supra.*

Este procedimiento "le imprime continuidad a todo proceso judicial que culmina con una sentencia", y es necesario utilizarlo cuando la parte obligada incumple con los términos de la sentencia. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 248 (2007) citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico; derecho procesal civil*, San Juan, Ed. Michie de PR, 1997, Cap. 63, pág. 453. Como regla general, las sentencias se ejecutan en el tribunal que dictó la sentencia que se pretende ejecutar. *Mun. de San Juan v. Prof. Research*, supra, pág. 248.

III.

En su primer señalamiento de error, MEP argumentó que el TPI erró al determinar que no procedía la ejecución de la sentencia al amparo de la Regla 51.1 de Procedimiento Civil, *supra*. Por otro lado, en su segundo señalamiento de error, sostuvo que el TPI erró al resolver que al Municipio le cobijaba la Ley Núm. 66-2014 y la Ley Núm. 3-2017 sin estos cumplir con los propios requisitos que establecen los referidos estatutos.

Discutiremos los señalamientos de error en conjunto por estar íntimamente relacionados entre sí. En primer lugar, cabe precisar que la Ley Núm. 66-2014, *supra*, es aplicable a la presente controversia. De hecho, resaltamos que el plan de pago que las partes establecieron mediante la estipulación transacción se fijó conforme a las disposiciones de la referida ley. Asimismo, en la *Resolución* que el TPI emitió el 14 de noviembre de 2017, estableció que no había duda en cuanto a que el Municipio estaba protegido por el Art. 13 de la Ley Núm. 3-2017, *supra*, y el Art. 29 de la Ley Núm. 66-2014, *supra*. Concurrimos con lo antes expuesto.

Dicho lo anterior, es importante destacar que, la Ley Núm. 66-2014, *supra*, siendo una ley especial, tiene primacía sobre cualquier otro estatuto en cuanto al asunto que atiende. Por lo tanto, esta desplaza las disposiciones de la Regla 51.1 de Procedimiento Civil,

*supra*, en cuanto a las ejecuciones de sentencia. El Art. 29 de la Ley Núm. 66-2014, *supra*, establece que no se podrá compeler a los municipios a hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, cuando no existan fondos para ello por haberse agotado la asignación legislativa destinada a esos fines. Así pues, **se prohíbe el embargo de fondos para hacer efectivo un fallo emitido contra el Estado**. Íd. Consecuentemente, cuando el Municipio no tiene fondos disponibles para honrar el plan de pago en un año fiscal particular lo que procede es aplazar el pago para el próximo año fiscal, teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados. Art. 13(g) de la Ley Núm. 3-2017, *supra*. En vista de ello, como concluimos previamente, en la presente controversia no es aplicable la Regla 51.1 de Procedimiento Civil, *supra* sobre ejecución de sentencias.

Ahora bien, cabe precisar que, aunque no procede el embargo de fondos para hacer efectiva la sentencia que se dictó en el presente caso para el pago de la deuda por concepto de los servicios que le proveyó MEP al Municipio, esto no exime a este último de cumplir con su obligación de pago. En el caso de marras, el TPI no celebró una vista evidenciaria para atender el asunto relacionado a la falta de pago por parte del Municipio del dinero adeudado. **Si el incumplimiento con los pagos correspondientes se debía a la falta de fondos, el Municipio tenía la obligación de cumplir con el Art. 29 de la Ley Núm. 66-2014, *supra*, y certificarlo. De igual forma, en caso de que los fondos proviniesen de asignaciones legislativas, incluyendo del Fondo General, ello debería ser confirmado por la Oficina de Gerencia y Presupuesto.** Es de esta manera que se podría aplazar el pago de la deuda para el próximo año fiscal, teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados conforme lo dispone el Art. 13 (g) de la Ley Núm. 3-2017, *supra*.

En virtud de lo antes expresado, le ordenamos al TPI a que celebre una vista evidenciaria para determinar si en efecto en Municipio dejó de cumplir con su obligación de pagar la deuda por falta de fondos. Si este es el caso, se debe presentar una certificación a tales efectos como mencionamos anteriormente. Además, el **TPI deberá determinar el pago de interés sobre la cantidad adeudada que le corresponde a la parte peticionaria conforme a lo establecido en las Reglas de Procedimiento Civil y las leyes especiales aplicables. Art. 29 de la Ley Núm. 66-2014,** *supra.*

IV.

Por los fundamentos antes expuestos, expedimos el recurso de *certiorari* y ***confirmamos*** el dictamen recurrido en cuanto a que no procede la ejecución de la sentencia conforme lo dispone la Regla 51 de Procedimiento Civil, 32 LPRA Ap. V., R.51 y ***modificamos*** a los efectos de que se celebre una vista evidenciaria para que se cumpla con lo establecido en el Art. 29 de la Ley Núm. 66-2014, *supra.* Así le ordenamos al TPI para que celebre una vista conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones